IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LAMONT THOMAS, No. N-03588, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-cv-571-MJR |
| | ) | |
| STATE of ILLINOIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM AND ORDER</u>

REAGAN, District Judge:

Lamont Thomas ("Plaintiff"), an inmate in Lawrence Correctional Center

("Lawrence"), brings this suit for deprivations of his constitutional rights pursuant to

42 U.S.C. § 1983.  Plaintiff is serving a fifteen year sentence for burglary, and four

years for theft.  This case is now before the Court for a preliminary review of the

complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any
> event, as soon as practicable after docketing, a complaint in a civil action in
> which a prisoner seeks redress from a governmental entity or officer or
> employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable
> claims or dismiss the complaint, or any portion of the complaint, if the
> complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may
> > be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such
> > relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim

upon which relief can be granted if it does not plead "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

<u>The Complaint</u>

Initially, it is apparent from a reading of the numbered paragraphs of the complaint that two pages (Doc. 1, pp. 17 and 18) were inadvertently reversed by Plaintiff.  Therefore, the Clerk shall be directed to re-file those two pages of the complaint to place them in the proper order.  References below to pages 17 and 18 shall be to the corrected version of the complaint.

Plaintiff's claims arose on July 29, 2010, when he was brought to the Lawrence Health Care Unit ("HCU") in response to his request to obtain copies of some of his medical records, which he needed for other pending litigation (Doc. 1, pp. 11, 13).

Plaintiff had made prior requests for this information over the past seven months, without successfully obtaining the desired records.  He suffers from hepatitis-C and hypertension, and had undergone thyroid testing.  He sought records of examinations relating to these problems from December 2009 to July 2010.  Although his medical records amounted to some 400 pages, he needed copies of only 30 to 40 selected pages (Doc. 1, p. 13).

Plaintiff asserts that, "per rule and custom" he was entitled to receive the first 50 pages of his requested medical records free of charge (Doc. 1, pp. 9,13).  However, when he arrived to pick up the records, Defendant Julie Morris informed Plaintiff that in order to receive the records, he must sign a voucher to be charged a fee of $12.00.  Plaintiff states that on two other occasions, Defendants Martin, Morris, and Brooks (all HCU staff) had attempted to make him pay for excess copies after they erroneously duplicated records that he did not request.  Plaintiff did not want to agree to any payment without first reviewing the records, and maintained that no payment should be due because of the 50-free-pages rule.  Plaintiff was also unwilling to sign the "refusal slip" documenting that he refused to accept the copies of the records.  A dispute between Plaintiff and Defendants Morris and Brooks ensued, in which Plaintiff claims Defendant Morris yelled racial epithets at him (Doc. 1, pp. 14-16).

Defendants Bayler,[1] Stanford, and Dowden[2] (Correctional Officers) were in the HCU during this confrontation.  Defendant Brooks asked Defendant Bayler to take

---

[1] Plaintiff sometimes refers to this Defendant as "Baylor" in the complaint, however, it is clear he is referring to a single individual.
[2] This Defendant's name may also be spelled "Downden" (Doc. 1, p. 5).

Plaintiff to segregation (Doc. 1, p. 15).  Plaintiff was instead returned to his regular cell, but was told one hour later that Defendant Bayler had ordered him to be taken to segregation (Doc. 1, p. 16).  He was then placed into a "strip cell" in the segregation unit, where he remained for approximately four days.

Defendant Morris wrote a disciplinary ticket on Plaintiff, charging him with insolence and disobeying a direct order (Doc. 1, p. 23; Doc. 1-1, pp. 1-2).  After a hearing, Plaintiff was given one month in segregation and a one-month demotion to C-grade (Doc. 1-1, p. 3).

Plaintiff claims that Defendants Morris and Brooks convinced Defendants Bayler and Stuck to put him in the segregation strip cell, where conditions were unusually harsh, in retaliation for Plaintiff's assertion of his rights to 50 free pages of his medical records, and of his right not to sign either the payment consent form or the refusal slip (Doc. 1, p. 16).  Defendants Morris and Brooks were also motivated in part by a desire to retaliate for his having filed past grievances against them.  According to Plaintiff, the strip cell was to be used for inmates who were suicidal (which he was not), and he was purposely placed in that cell by Defendant Stuck (the segregation supervisor).  Defendant Stuck allegedly went along with the request of Defendants Morris, Brooks, and Bayler to house Plaintiff in the strip cell when other, less harsh segregation cells were available (Doc. 1, p. 18).

The strip cell was filthy and had none of the amenities of a regular cell -- no electrical outlets or switch to turn off the lights (which stayed on all night), the bed was just a slab of concrete, and the bedding consisted of only a torn and dirty plastic-covered mattress (Doc. 1, pp. 20-22).  Plaintiff was also not allowed to have any

property, clean clothing, or writing materials.  Worse, he claims the cell walls were smeared with feces and the room smelled of urine; it was infested with bugs, red ants, and spiders which he found crawling on his body any time he lay down (he sustained a painful spider bite); the water was brown and dirty and gave him gas, diarrhea, and stomach aches; there was no ventilation or handles to close the window, causing the room temperature to exceed 90 degrees during the day and fall into the 50s or below at night, as well as letting rain and insects into the room.  He was also denied one dinner and two lunch meals due to confusion on the part of unnamed staff who thought he was on a hunger strike (Doc. 1, p. 22).

Plaintiff's requests to be moved or given cleaning supplies were refused by Defendants Stuck, Goins, Vaughn, and Stanford.  Defendant Vaughn (the segregation unit counselor) refused to give Plaintiff writing materials, preventing him from writing a request slip to be moved from the strip cell.  These Defendants also allegedly admitted to Plaintiff that he had been placed there as a favor to Defendants Bayler, Morris, and Brooks, and they were not going to go against the wishes of these fellow staff members by moving him (Doc. 1, p. 20).  Defendant Fisher refused to issue Plaintiff unspecified property items that were permitted in segregation cells, while providing those same items to other inmates who went into segregation on the same day as Plaintiff (Doc. 1, p. 24).  Plaintiff asserts this was part of the retaliation scheme against him.

Additionally, Plaintiff claims that when he was taken to the showers and strip-searched on July 29, 2010, before being moved to the strip cell, he began to feel faint, dizzy, and had difficulty breathing (Doc. 1, pp. 19-20).  He asked Defendant

Stuck for medical attention for these problems, but Defendant Stuck as well as other unknown officers in the shower area refused to call for any medical staff to examine Plaintiff.

Plaintiff further makes a general claim that from 2009 through 2011, Defendants Martin, Morris, and Brooks (the HCU staff) conspired to hinder his efforts to "obtain competent/adequate/and necessary medical care," and that after he filed formal complaints, they denied medical services and engaged in "acts of deliberate harm/punishments" in retaliation for those complaints (Doc. 1, p. 10). He also asks the Court to allow him to bring a common law claim of negligence against all the Defendants, who failed to provide "unbiased medical services" to him, causing his pre-existing ailments to worsen, as well as causing new medical problems (Doc. 1, pp. 25-26).

Finally, Plaintiff asserts that it is the policy of Defendant Wexford Health Service, Inc. ("Wexford"), to violate his constitutional rights by failing to adequately train, supervise, or discipline its employees, and by allowing its staff to violate its own policies (Doc. 1, pp. 10, 25).

Plaintiff seeks injunctive relief to prevent further retaliatory punishment against him, as well as compensatory and punitive damages.

Discussion

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into five (5) counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion

as to their merit.

**Count 1 – Retaliation**

Initially, it should be noted that merely moving an inmate to segregation when a disciplinary ticket is or will be issued does not implicate any constitutional concerns.  However, Plaintiff has alleged that several of the Defendants agreed to make sure that Plaintiff would be placed in an especially disagreeable location within the segregation area, in retaliation for his assertion of his right to free copies and for other past complaints.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Naming the protected activity and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*  A complaint that provides a short, clear statement of the relevant facts complies with the federal rules of civil procedure, and thus cannot be dismissed because it does not allege all facts necessary to clearly establish a valid claim.  *Id.*

However,

> [N]ot every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment.  Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred.  *Murphy v. Lane,* 833 F.2d 106, 108-09 (7th Cir. 1987) (holding that the plaintiff's complaint "set forth a chronology of events from

> which retaliatory animus on the part of defendants could arguably be
> inferred" sufficient to overcome a motion to dismiss).  *See also Benson
> v. Cady,* 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely
> the ultimate fact of retaliation is insufficient").  Barring such a
> chronology, dismissal may be appropriate in cases alleging retaliatory
> discipline.

*Cain*, 857 F.2d at 1143 n.6.

While belligerence toward prison staff is not a "protected activity," raising a
verbal complaint over a prison rule or condition is.  Plaintiff's version of events, in
which he pointed out the rules that he should be allowed 50 free pages of medical
records,[3] should be allowed to review the proffered documents to make sure that
they included the records he requested, and could not be forced to sign any
documents against his will, must be given credence at this stage of the litigation.  See
*Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011).

Plaintiff asserts that he heard Defendant Brooks tell Defendants Morris, Bayler,
and Dowden that a disciplinary ticket and segregation was in order, charging Plaintiff
with intimidation, threats, and refusing a staff order during their disagreement over
Plaintiff's attempt to obtain his medical records (Doc. 1, p. 16).  Defendant Brooks
went on to say, "in July, certain segregation cells are hellish, his (Plaintiff) black ass
has filed grievances on me for past minor errors with his hepatitis-C, kemo-therapy
[sic] medications, and other mistakes [by Defendants Brooks and Morris] . . .
[Plaintiff] needs strip cell placement."  *Id.*  Later, when Plaintiff entered the
segregation unit, he heard Defendant Stuck say:

> it seems the nurses have to re-write/re-do [Plaintiff's] proposed
> disciplinary ticket, from intimidation/threats, down to just alleged

---

[3] The Court offers no opinion on the accuracy of Plaintiff's assertion that a policy of the prison
or Wexford entitled him to receive the first 50 pages of his medical records without charge.

> insolence and refusing a direct order, and that [Defendant] Baylor's
> previous call . . . requesting that [Plaintiff] be placed in a strip/suicide
> cell still stands, as it appears some nurses have a hair up their butts and
> want [Plaintiff] to experience our hell(summer)-cells, accommodations.

(Doc. 1, p. 18).

At the pleadings stage of this case, Plaintiff's allegations must be taken as true. Based on the sequence of events he describes, and the overheard comments of Defendants Brooks and Stuck, Plaintiff has made out a plausible claim that his particular placement in the strip cell was in retaliation for both his complaint over being charged for copies of his medical records, and for having filed prior grievances against Defendants Brooks and Morris. Therefore, the retaliation claim against Defendants Brooks, Morris, Bayler, and Stuck shall be allowed to proceed for further consideration.

In addition, Plaintiff's assertion that Defendants Goins, Vaughn, and Stanford refused to move Plaintiff from the strip cell because they were acting in concert with Defendants Brooks, Morris, and Bayler, is sufficient at this stage to state a claim of their participation in the retaliation. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). Similarly, Plaintiff's allegations that Defendant Fisher denied him property items that should have been available to segregation inmates, as part of the coordinated retaliation, states a claim at this stage.

Plaintiff also appears to include Defendants Dowden and Martin in his claim of

retaliation.  However, he does not describe any personal involvement on the part of these Defendants in the efforts to retaliate against Plaintiff by ensuring his placement in the strip cell.  Defendant Dowden was present in the HCU during the altercation there between Plaintiff and Defendants Morris and Brooks, and allegedly gave the order to Plaintiff to sign the refusal slip (Doc. 1, p. 16).  He also helped escort Plaintiff from the HCU back to his regular cell.  However, Plaintiff does not allege that Defendant Dowden gave orders or even discussed the idea of placing Plaintiff in the strip cell.  Therefore, Plaintiff fails to state a retaliation claim against Defendant Dowden, and he shall be dismissed from this action without prejudice.

Defendant Martin was a medical administrator during the events Plaintiff describes (Doc. 1, p. 7).  However, the fact that he may have been the supervisor of Defendants Morris and Brooks does not create liability on his part.  "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'"  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987);  *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).  Plaintiff has not alleged that Defendant Martin had any personal involvement in the incident which led to Plaintiff's placement in the strip cell, therefore, Defendant Martin shall be dismissed from this action with prejudice.

To summarize, the retaliation claim against Defendants Brooks, Morris, Bayler,

Stuck, Goins, Vaughn, Stanford, and Fisher shall receive further review.

**Count 2 – Inhumane Cell Conditions**

Plaintiff alleges that the conditions in the strip cell, where he spent at least four days, were unbearable in several respects: filth, including exposure to human waste and its odors, pest infestation, unclean water, inadequate protection from the heat and cold, and lack of ventilation. He also complains about the lights remaining on around the clock, the lack of writing materials and property items, and the occasional denial of food.

Inhumane conditions of confinement may give rise to a civil rights claim under the Eighth Amendment prohibition against cruel and unusual punishment, which is applicable to the states through the Fourteenth Amendment. Such Eighth Amendment claims have provided a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.*, (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes*, 452 U.S. at 346; *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th

Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id.* The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret,* 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component of an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. This requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32

F.3d 1024, 1032 (7th Cir. 1994).  The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm.  *Farmer*, 511 U.S. at 842.  A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm.  *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).  It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

### A. Unsanitary Conditions, Extreme Temperatures, and Lack of Ventilation

Turning first to the objective conditions alleged by Plaintiff, unsanitary conditions and vermin infestation similar to those he describes have been found to state a claim under the Eighth Amendment.  *See Vinning-EI v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink[.]"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls); *see also, DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (thirty-six hours with no working toilet, flooded cell and exposure to human waste as well as the odor of accumulated urine, stated Eighth Amendment claim); *White v. Monohan*, 326 F. App'x 385, 387-88 (7th Cir. 2009) (serious pest infestation resulting in physical injury may state a claim).

Similarly, exposure to extreme temperatures may state an Eighth Amendment

claim.  Prisoners have an Eighth Amendment right to adequate shelter, including a right to protection from cold, and cold conditions need not present an imminent threat to the inmate's health to implicate the Eighth Amendment.  *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997).  To assess whether cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold."  *Id.* at 644; *see also Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999) (finding that exposure to extreme cold for 17 hours could constitute Eighth Amendment violation); *Henderson v. DeRobertis*, 940 F.2d 1055, 1058 (7th Cir. 1991) (finding that deprivation of blankets for four days in extreme cold could constitute Eighth Amendment violation); *but see Mays v. Springborn*, 575 F.3d 643, 648-49 (7th Cir. 2009) (prisoner who had hurt ears, numb hands, feelings of frostbite, and caught colds because he was never issued adequate winter clothing showed only that he was subject to the "usual discomforts of winter," not the objectively serious harm required to state an Eighth Amendment claim).

In the case at bar, Plaintiff was confined in the strip cell during summer, but alleges that he had inadequate protection from the cold nighttime temperatures.  He could not close the window to keep out the cold night air, and had to wrap himself in the filthy mattress in an attempt to keep warm, because he had no other bedding.  During the day, he was subject to extreme heat in excess of 90 degrees, with no ventilation or fan to cool the room.  Extreme heat and lack of ventilation may also

state an Eighth Amendment claim.  *See Sanders v. Sheahan*, 198 F.3d 626, 628-29 (7th Cir. 1999) (prisoner stated a claim based on excessive heat and poor ventilation); *see also Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (prisons must provide "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities"); *Board v. Farnham*, 394 F.3d 469, 486–87 (7th Cir. 2005) (Eighth Amendment claim may be stated based on poor ventilation).

Plaintiff's allegations as to the unsanitary cell conditions, pest infestation, and extreme temperatures, combined with the lack of bedding and dirty water, thus meet the objective component of an Eighth Amendment claim at the pleadings stage.

As to the subjective element, he alleges that Defendants Bayler and Stuck engineered Plaintiff's placement in the strip cell, knowing that the conditions, particularly the extreme heat, would be especially uncomfortable to him.  Defendants Stuck, Goins, Vaughn, and Stanford all heard Plaintiff's pleas to be moved out of the strip cell due to the unbearable conditions, or to be given cleaning supplies to combat the filth.  Although these Defendants were put on notice of the potential harm to Plaintiff from remaining in the cell, they refused to move or assist him.  At this stage of the litigation, Plaintiff's allegations are sufficient to state an Eighth Amendment claim for inhumane cell conditions against these parties.  Accordingly, the claim against Defendants Bayler, Stuck, Goins, Vaughn, and Stanford shall receive further review.

### B. Deprivation of Property and Writing Materials

However, some of Plaintiff's allegations do not state a constitutional claim.  He does not specify what items of property (which were provided to other segregation

inmates) were denied to him by Defendant Fisher.  He states generally that for three

to five days, he did not have legal documents, mailing materials, books, magazines,

unspecified cosmetic/hygiene products, and clean underwear (Doc. 1, p. 22).

According to the complaint, Plaintiff went without these items for only a short time.

Likewise, the denial of writing materials by Defendant Vaughn for three to five days

(Doc. 1, p. 23) did not prevent Plaintiff from preparing and filing grievances shortly

after being assigned to the strip cell.  The adage *de minimis non curat lex* (the law

does not concern itself with trifles) applies with the same force in civil rights

litigation as in any other tort action.  *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.

1982).  Accordingly, Plaintiff fails to state a claim upon which relief may be granted

against Defendant Fisher or Defendant Vaughn for, respectively, denying him property

items and writing materials. [4]

### C. Deprivation of Food, Inability to Turn off Lights

In the same vein, Plaintiff complains that he missed three meals during his

time in the strip cell.  Although inmates must be provided with adequate nutrition, a

court must assess the amount of food an inmate was denied as well as the duration of

the deprivation when determining whether an Eighth Amendment violation may have

occurred.  *Reed v. McBride,* 178 F.3d 849, 853 (7th Cir.1999).  In Plaintiff's case, he

missed only one meal per day over three different days, and he attributes this not to

deliberate deprivation, but due to a misunderstanding by prison staff who believed he

was on a hunger strike (Doc. 1, p. 22).  Such a negligent omission cannot form the

---

[4] However, as noted in Count 1, a retaliation claim against these Defendants may be
maintained even though the underlying deprivation of property or writing materials does not
violate the constitution in and of itself.  *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir.
2009).

basis for liability under § 1983. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

Plaintiff's complaint that the lights in his cell remained on all day and night also does not rise to the level of a constitutional deprivation. In considering a claim for sleep deprivation due to a constantly lighted cell, courts must consider the duration of the condition, the effects of the interruption of sleep on the specific inmate, as well as the legitimate reasons for the interruption. *See Scarver v. Litscher*, 434 F.3d 972, 974 (7th Cir. 2006) (inmate stated a claim where cell was constantly illuminated, which exacerbated his mental condition); *Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir. 1996) (inmate was confined for only 14 days in lighted cell, lights were necessary for observation purposes, and inmate was observed asleep for a number of hours); *Kennan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (inmate stated a claim when he was subjected to bright light for 24 hours a day during his six months in segregation, which caused substantial sleeping problems as well as psychological harm). In Plaintiff's case, while there does not appear to be a legitimate reason for the lights to have been left on, the duration of this condition was short, and he fails to allege any substantial harm.

Thus, this portion of Plaintiff's claim shall be dismissed without prejudice.

**Count 3 – Deliberate Indifference to Serious Medical Needs**

**A. July 29, 2010, Incident**

Plaintiff's only specific claim as to denial of medical care is that on July 29, 2010, while he was being strip-searched in the shower area prior to his confinement in the segregation strip cell, he became dizzy, felt faint, had chest pain, and couldn't

breathe (Doc. 1, p. 19).  Plaintiff asked Defendant Stuck to get him immediate medical attention for these symptoms, to no avail.  Two other unnamed officers also refused to obtain any assistance for him, telling him to fill out a sick call slip. However, Plaintiff was never provided with any writing materials to submit such a request.  Plaintiff notes that he is over age 50, has hepatitis-C, high blood pressure, a heart murmur, and claims to have ailments related to soy food consumption.

As with the other Eighth Amendment claims described above, a claim for deliberate indifference to serious medical needs has both an objective and subjective component.  *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).  First, the medical condition must be objectively serious.  The Seventh Circuit considers the following to be indications of  a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain."  *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).  In addition, a condition that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention is also considered a "serious" medical need.  *Id.*

Secondly, the prison official must have "acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837.  The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering").

In Plaintiff's case, his symptoms of chest pain, shortness of breath, dizziness and feeling faint indicated that he could have been suffering from a serious medical condition, and should have alerted a layman to the need for a medical evaluation, even if the layman had no knowledge of Plaintiff's underlying medical conditions.  He has thus stated the objective portion of a deliberate indifference claim.  As to the subjective component, Plaintiff alerted Defendant Stuck and the unknown officers to his symptoms and asked for medical attention.  However, they did not act on his request, and failed to give him a pen or paper to submit a sick call slip when he asked for them (Doc. 1, pp. 19-20).  Plaintiff's allegations are thus sufficient to state a deliberate indifference claim against Defendant Stuck that shall receive further review.  In addition, Plaintiff has stated a claim against the unidentified officers.  However, he cannot proceed against them unless he can identify them by name in an amended complaint.

### B. General Claims

Plaintiff raises a general claim that from 2009 to 2011, Defendants Martin, Morris, and Brooks denied him medical services, conspired to hinder his efforts to

obtain necessary medical care, and deliberately harmed or punished him in retaliation for filing formal complaints (Doc. 1, p. 10).  However, other than the dispute over records and the incident described above in Count 3-A, he offers no specifics as to what medical care or services were denied him, nor does he explain what treatment was denied him for which of his ailments.

Plaintiff's bare conclusory assertion that these Defendants denied him access to medical care is not sufficient to state a constitutional claim upon which relief may be granted.  *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Accordingly, this portion of Plaintiff's claim shall be dismissed without prejudice.

## Count 4 – Negligence

Plaintiff asks this Court to exert its supplemental jurisdiction over a common law claim of negligence (Doc. 1, pp. 25-26).  He claims that all of the Defendants failed to provide "unbiased medical services" to him, and instead "deliberately gave Plaintiff ineffective, wrong, or no kind of services," causing him bodily injury, causing his pre-existing ailments to worsen, and causing "numerous new symptoms/ailments." *Id.*  As with Count 3-B above, however, Plaintiff states only legal conclusions, and does not give any specifics from which the Court might discern the elements of a cognizable negligence claim.

It is true that a federal court may exercise supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).  However, because Plaintiff's statements are so broad and non-specific, the Court cannot conclude that

his negligence claim shares a "common nucleus of operative fact" with any of the surviving federal claims.  Therefore, Plaintiff's negligence claim shall be dismissed without prejudice.

**Count 5 – Racial Harassment**

Likewise, Plaintiff's complaint about the use of racial slurs against him by Defendants Brooks and Morris fails to state a claim.  "The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (citing *Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir.1987)).  This claim shall be dismissed with prejudice.

**Defendant Wexford Health Service, Inc., ("Wexford")**

Plaintiff asserts that Wexford should be liable to him for the unconstitutional acts of its employees (Defendants Morris, Brooks, and Martin), because it has a policy and custom of hiring untrained and incompetent employees; failing to adequately train, supervise and discipline those employees; and allowing its staff to violate its policies and procedures as well as policies/procedures of the Illinois Department of Corrections (Doc. 1, pp. 10, 25).

A corporation such as Wexford can be held liable for a violation of an inmate's constitutional rights only if it had a policy or practice that caused the alleged violation.  *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).  *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).  Plaintiff attempts to make out a claim that the alleged offenses committed against him by the Wexford employees resulted from an official policy espoused by

Defendant Wexford.  However, the allegation that Wexford has an official policy of hiring incompetent staff and allowing them to violate policies stretches credulity and is not sufficient to state a viable claim against Wexford.  Plaintiff's allegations boil down to a theory that Wexford should be liable based on its supervisory role over its employees.  However, this is not the law.  Accordingly, Defendant Wexford shall be dismissed from this action with prejudice.

**Defendant State of Illinois**

Plaintiff cannot maintain any of his claims against the State of Illinois.  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same).  The State of Illinois thus shall be dismissed from this action with prejudice.

**Defendants Puisis, Randle, Ryker, and Martin**

Plaintiff names Defendants Michael Puisis (Medical Director of the Illinois Department of Corrections – "IDOC"), Michael Randle (IDOC Director), Derwin Ryker (Lawrence Warden), and Phillip Martin (Lawrence Medical Administrator) in the complaint.  However, he does not identify any actions taken by any of these individuals that caused the constitutional deprivations giving rise to this lawsuit.

Instead, he appears to assert claims against them based on their role as administrators with supervisory authority over the Defendants who caused the alleged deprivations.  For example, in the case of Defendant Martin, Plaintiff claims he "gave nursing staff [Defendants Brooks and Morris] the assumed authority to circumvent . . . rules, policies, training" in order to retaliate and harass Plaintiff (Doc. 1, p. 24).  In essence, Plaintiff seeks to impose supervisory liability.

Contrary to the belief of many prisoner civil rights litigants, there is no supervisory liability in this type of lawsuit.  "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'"  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).  Furthermore, "A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."  *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  *See also Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982) (director of state correctional agency not personally responsible for constitutional violations within prison system solely because grievance procedure made him aware of it and he failed to intervene).

Because Plaintiff has failed to allege any personal involvement on the parts of Defendants Puisis, Randle, Ryker, and Martin in the alleged violations of his constitutional rights, these Defendants shall be dismissed with prejudice.

<u>Disposition</u>

The Clerk is **DIRECTED** to re-file pages 17 and 18 of the complaint (Doc. 1) in the proper order:  the page originally filed as 18 should instead be filed as page 17, and page 17 should become page 18.

**IT IS HEREBY ORDERED** that **COUNTS 2-B, 2-C, 3-B, 4**, and **5** fail to state a claim upon which relief may be granted, and thus are **DISMISSED**.  The dismissal of **COUNTS 2-B, 2-C, 3-B**, and **4** shall be **without prejudice**.  The dismissal of **COUNT 5** is **with prejudice**.  Defendants **STATE of ILLINOIS, PUISIS, RANDLE, RYKER, MARTIN**, and **WEXFORD** are **DISMISSED** from this action **with prejudice**.  Defendant **DOWDEN** is **DISMISSED** from this action **without prejudice**.

**COUNTS 1, 2-A**, and **3-A** shall receive further review.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **BAYLER, STANFORD, STUCK, GOINS, VAUGHN, FISHER, MORRIS**, and **BROOKS** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on any Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint.

Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* Fed. R. Civ. P. 41(b).

IT IS SO ORDERED.

DATED: 8/9/2012

_s/ MICHAEL J. REAGAN_____
U.S. District Judge